IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

04 SEP 29 PM 3: 44

U.S. DISTRICT COURT
N.D. OF ALABAMA

CARLOS HERRERA,              )
                            )
        Plaintiff,          )
                            )
vs.                         )        CV-01-AR-0186-M   **ENTERED**
                            )
CAPTAIN SCOTT HASSEL, ET AL.,   )                      SEP 2 9 2004
                            )
        Defendants.         )

MEMORANDUM OF OPINION

This is a civil action filed pursuant to 42 U.S.C. § 1983 in which the plaintiff, Carlos Herrera,

alleges that his constitutional rights were violated during his incarceration at the Etowah County

Detention Center in Gadsden, Alabama. The *pro se* complaint was filed on January 17, 2001,

naming as defendants Captain Scott Hassell[1] and Chief Wes Williamson.[2] Plaintiff seeks an

investigation, injunctive relief, and monetary damages.

On December 17, 2001, the court entered an Order for Special Report directing that copies

of the complaint in this action be forwarded to each of the named defendants and requesting that they

file a special report responding to the factual allegations of the complaint. On March 5, 2002, the

defendants filed their special report attaching documents and the affidavits of the defendants. By

Order of July 24, 2002, the parties were notified that the special report filed by the defendants would

---

[1] The court notes that plaintiff misspelled defendant Hassell's last name in his complaint. Plaintiff incorrectly spelled the defendant's last name as "Hassel".

[2] It is noted that plaintiff misspelled defendant Williamson's first name in his complaint. In the complaint, plaintiff listed defendant Williamson as "West" Williamson. The correct spelling is Wes.



be construed as a motion for summary judgment, and the plaintiff was notified of the provisions and consequences of Rule 56 of the *Federal Rules of Civil Procedure*. Plaintiff did not file a response to the defendants' motion for summary judgment. On September 30, 2002, the motion for summary judgment was granted and this action was dismissed without prejudice due to plaintiff's failure to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). On October 8, 2002, plaintiff filed a Motion For Clarification in which he stated that he was never served with a copy of the defendants' special report and that he, therefore, could not respond to it. On October 9, 2002, the court construed plaintiff's motion for clarification as a motion to vacate the Memorandum of Opinion and Final Judgment entered on September 30, 2002. In the interest of justice, the court granted plaintiff's motion. Counsel for the defendants was ordered to send a copy of the special report filed in this action along with a copy of the exhibits attached to the special report to the plaintiff. Plaintiff was given thirty days from the date on the Certificate of Service to respond to the defendants' motion for summary judgment. Plaintiff was advised that, thereafter, the motion would be taken under advisement by the court and an Order entered thereon without further notice. Plaintiff filed his opposition to the defendants' special report on December 9, 2002.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.

2

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).

## FACTS

Applying these standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, have been taken in a light most favorable to the plaintiff. On November

3

8, 2000, while incarcerated in Unit Four of the Etowah County Detention Center, plaintiff became involved in an altercation with another inmate (plaintiff's complaint page three). Both inmates suffered head injuries as a result of the fight (plaintiff's complaint page three). After the fight, plaintiff was moved to administrative segregation in Unit Two of the jail (plaintiff's complaint page three). Plaintiff's move to administrative segregation following the November 8, 2000 fight was in accordance with jail policy (defendant Williamson's affidavit page ten and defendant Hassell's affidavit page two). This was done to protect both other inmates and members of the jail staff and to insure the orderly operation of the facility (defendant Williamson's affidavit page eleven and defendant Hassell's affidavit page two). Plaintiff was subsequently charged with a disciplinary violation and was given the opportunity to have a hearing (defendant Williamson's affidavit page eleven and defendant Hassell's affidavit pages two and three). After plaintiff was found guilty, he was locked down and denied nonessential items for a period of time (defendant Williamson's affidavit page eleven and defendant Hassell's affidavit page three). Privileges were denied plaintiff both as punishment and in order to prevent him from securing items which could be used as weapons against other inmates or members of the jail staff (defendant Williamson's affidavit page eleven and defendant Hassell's affidavit page three).

On November 11, 2000, Sergeant Larry Teal placed plaintiff on administrative segregation based on events which occurred during the week of November 8, 2000 (defendant Williamson's affidavit page 10). Plaintiff was placed on administrative segregation because in Sergeant Teal's judgment, plaintiff had endangered the safety and well being of other inmates, had demonstrated unmanageable behavior in the general population, and had participated in a riot, mutinous act, or

4

disturbance (defendant Williamson's affidavit page ten). Defendant Williamson approved Sergeant Teal's actions (defendant Williamson's affidavit page ten).

Also on November 11, 2000, after several days of trouble from Immigration and Naturalization Service (hereinafter INS) inmates, including fights, urine being thrown at a correctional officer, and the confiscation of one weapon, it was determined that the INS area of the jail should be searched for additional weapons (defendant Hassell's affidavit page one). A search team of eleven members was assembled and briefed regarding the circumstances. Members of the search team included defendant Hassell, John Reeves, Adam Butler, Wayne Lewis, Robert Alexander, Phillip Brasswell, Keith Medley, G. Williamson, Brent Holloway, Mitchell Hill, and Sergeant Larry Teal (defendant Hassell's affidavit page one). Also present were Assistant Chief Linda Pentecost, Sergeant Misty Pentecost, Chief Wes Williamson, and INS Officers George Taylor and Perry Zaner. On the morning of November 11, 2000, at approximately 12:50 a.m., the search team entered the INS Housing Unit. The incident report prepared by defendant Hassell reveals that officers entered plaintiff's cell at 1:27 a.m. (defendant Hassell's affidavit page two). Plaintiff was removed from his cell and moved to cell 210 while his cell was searched (defendant Hassell's affidavit page two). Following the search, plaintiff was returned to his cell and locked down (defendant Hassell's affidavit page two).

As a result of plaintiff being found guilty of charges brought against him, he was subjected to disciplinary action, placed in a maximum custody classification, and denied privileges (defendant Hassell's affidavit page two). On December 4, 2000, defendant Hassell ordered plaintiff moved to administrative segregation, but to remain on disciplinary status (defendant Hassell's affidavit page

two). Plaintiff's personal property was returned to him, but he continued to be held as a maximum custody inmate (defendant Hassell's affidavit page two).

DISCUSSION

In the special report, the defendants maintain that this case should be dismissed because plaintiff has failed to exhaust his administrative remedies. The defendants contend that plaintiff has not utilized two separate and distinct administrative remedies available to him. They state that plaintiff does not allege that he pursued any grievance procedure provided at the local level in the Etowah County Detention Center and that plaintiff does not allege that he pursued any grievance through the State Board of Adjustment.

In his complaint, where he was asked to state what steps he took pursuant to the jail grievance procedure, plaintiff states, "Ask & ask & ask". He states further, "I never could get no grievance" and finally states, "Well the reason [I] did'nt (sic) go through the Grievance procedure is because they don't have a  proper Grievance procedure also they refuse to give me a request form or Grievance form" (plaintiff's complaint page two). In their sworn affidavits, defendants Williamson and Hassell state that they know of no time that plaintiff was denied a grievance form or use of the grievance procedures in the Etowah County Detention Center (defendant Williamson's affidavit page eleven and defendant Hassell's affidavit page three). They state further in their affidavits that all inmates who request grievance forms are supplied with them at the earliest possible time (defendant Williamson's affidavit page eleven and defendant Hassell's affidavit page three). Further, in his sworn affidavit, defendant Williamson states that it is the policy of the Etowah County Sheriff's Department that inmates be given a forum for expressing their concerns and grievances (defendant Williamson's affidavit page three). He states that grievances may be submitted on an informal basis

6

or placed in written or "formal" form and submitted to a member of the jail staff (defendant Williamson's affidavit page three). Defendant Williamson states further that inmates are made aware of the grievance procedure through a videotape presentation upon their admittance to the Etowah County Detention Center and/or the receipt of a detainee handbook upon admission (defendant Williamson's affidavit page three). A copy of the Etowah County Detention Center Policy and Procedure Manual "Detainee Grievances Procedures" is attached to the defendants' Special Report as defendants' Exhibit 2. In addition, defendants Williamson and Hassell correctly point out that plaintiff, in fact, attached a grievance form to his complaint thus demonstrating that he had access to such forms (defendant Williamson's affidavit page eleven and defendant Hassell's affidavit page three). The court notes that the grievance form attached to plaintiff's complaint (Document # 1) is dated prior to the incidents about which plaintiff complains in this action. In his opposition to the defendants' special report, plaintiff states "[w]ith respect to the filing of grievance, plaintiff can not argue there was not a grievance procedure in place; rather, he contends the procedure was ineffectual for several reasons". The reasons listed by plaintiff are that although he requested grievance forms on many occasions, officers ignored his requests or failed to provide him with the forms; that over the course of a year, one or two of his grievance forms received responses; and that grievances he filed on sheets of paper were not answered. It is clear therefore that plaintiff was aware of the grievance procedure in place at the Etowah County Detention Center.

In 1996, Congress enacted the Prison Litigation Reform Act of 1995, Pub.L. No. 104-134, 110 Stat. 1321 (1996) (PLRA) in an attempt to control the flood of prisoner lawsuits. Title 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1995 ("PLRA"), provides:

7

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

It is clear that plaintiff's claims that he was placed in administrative segregation without being given a hearing or a write-up following a fight with another inmate on November 8, 2000, that on November 10, 2000, defendant Hassell and other officers used excessive force upon him, that he was placed in a stripped cell for fifteen days and denied privileges, and that he was punished because he is an illegal alien concern the conditions to which he was subjected while he was confined in the Etowah County Detention Center. It is undisputed that the Etowah County Detention Center has an institutional inmate grievance policy through which inmates may present such claims to jail administrators for resolution. In his complaint, plaintiff states that he did not submit a grievance in connection with these claims. In his opposition to the defendants' special report, plaintiff states that he did submit grievances, but he does not state that any of the grievances submitted were in connection with the claims raised in this action. Clearly, plaintiff has failed to show that he submitted a grievance form in connection with the claims raised in this action.

In *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998), the Eleventh Circuit Court of Appeals discussed the amendment of 42 U.S.C. § 1997e(a) by the PLRA, concluding that "Congress now has mandated exhaustion" and that "exhaustion is now a pre-condition to suit [by prisoners]." 159 F.3d at 1325-26. The Court of Appeals for the Eleventh Circuit has also made it very clear that a district court may not waive this exhaustion requirement. *Id.* at 1326. In *Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), the Supreme Court, interpreting the intent of Congress, concluded that exhaustion of administrative remedies is now mandatory even if the procedures to do so do not meet certain "minimum acceptable standards" of fairness and effectiveness, and courts

8

cannot excuse exhaustion even when it would be "appropriate and in the interests of justice." *Id.* at 740 n.5.

Plaintiff claims in his opposition to the defendants' special report that he failed to utilize the Etowah County Detention Center's inmate grievance policy to resolve his complaints regarding the conditions under which he was confined because "the procedure was ineffectual". However, the court in *Alexander v. Hawk*, *supra*, specifically held that "the judicially recognized futility and inadequacy exceptions [that had existed under former § 1997e(a)] do not survive the new mandatory exhaustion requirement of the PLRA." *Id.* at 1325. Thus, plaintiff's failure to utilize the grievance procedure that existed at the Etowah County Detention Center cannot be excused on the basis of futility or that it was ineffective.

In addition, in his opposition to the defendants' special report, plaintiff claims that "case law at the time in question did not mandate exhaustion". This claim also fails. The conditions about which plaintiff complains occurred in November, 2000. The PLRA went into effect in 1996, four years prior to the incidents in question.

Inasmuch as plaintiff has failed to present any facts to show that he submitted a grievance form in connection with the claims raised in this action, the court concludes that plaintiff failed to utilize the Etowah County Detention Center's inmate grievance policy to resolve his complaints regarding the conditions under which he was confined. Accordingly, plaintiff's claims are due to be dismissed without prejudice due to plaintiff's failure to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Defendants Hassell and Williamson are entitled to summary judgment.

For the reasons stated above, defendants Scott Hassell and Wes Williamson's  motion for summary judgment is due to be GRANTED and this action against defendants Scott Hassell and Wes Williamson is DISMISSED WITHOUT PREJUDICE.

A separate final judgment consistent with this Memorandum of Opinion will be entered contemporaneously herewith.

DATED this 29th day of _____ September _____ , 2004.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE